# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ATTORNEY FEES OF JOHN W. UJLAKY

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff,

v

SHAWN DOUGLAS SIMPSON,

   Defendant,

and

JOHN W. UJLAKY,

   Appellant.

UNPUBLISHED
February 23, 2017

No. 330491
Kent Circuit Court
LC No. 11-002833-FC

Before: BORRELLO, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Appellant, John W. Ujlaky, appeals as of right the trial court's order denying his request for extraordinary appellate attorney fees. Because the trial court sufficiently complied with the Supreme Court's remand order, we affirm.

## I. BASIC FACTS

In May 2012, Ujlaky was appointed by the Kent County Circuit Court to represent Shawn Simpson on appeal. Simpson had been convicted by guilty plea of first-degree criminal sexual conduct, MCL 750.520b, and Ujlaky filed with this Court a delayed application for leave to appeal on Simpson's behalf. In October 2012, we denied the application for lack of merit in the grounds presented.[1]

---

[1] *People v Simpson*, unpublished order of the Court of Appeals, issued October 24, 2012 (Docket No. 312343).

On October 26, 2012, Ujlaky submitted a Michigan Appellate Assigned Counsel System (MAACS) Statement of Service and Order for Payment of Court Appointed Counsel to the Kent County Circuit Court. He requested attorney fees totaling $2,150.05 and expenses totaling $335.03. Ujlaky checked the box on the MAACS form labeled "Motion for extraordinary fees (attach copy)," and he attached an itemized billing statement describing the services performed and the time spent performing those services. On November 7, 2012, the circuit court signed an order of payment totaling $995.03, which reflected the $335.03 in expenses and $660 in attorney's fees, which is the Kent County maximum allowed for standard appeals of guilty pleas.

On November 29, 2012, Ujlaky filed with the circuit court a motion for payment of extraordinary professional fees. During a hearing on Ujlaky's motion, the circuit court asked him what was complex or difficult about the case that warranted extraordinary fees, to which Ujlaky responded:

> Well, nothing particularly you know. It's just a matter of having to review the record. There were substantial transcripts of 94 pages which involved an extensive evidentiary hearing that had to be reviewed and prepared as part of the application for leave to appeal, and certainly services exceeded the bare minimum.

Thereafter, on April 16, 2013, the court denied Ujlaky's request for extraordinary fees. Ujlaky appealed the court's order to this Court and we affirmed the trial court's order, noting that although "the circuit court failed to explicitly address whether the fees sought were both extraordinary and reasonable," Ujlaky had nevertheless failed to prove "the extraordinary nature of the services rendered and the reasonableness of the fees sought."[2] On September 30, 2015, our Supreme Court issued an order reversing our decision and remanding the case back to the circuit court with instructions to "either award the requested fees, or articulate on the record its basis for concluding that such fees are not reasonable." *In re Ujlaky*, 498 Mich at 890, 890; 869 NW2d 624 (2015).

On remand, without holding a new hearing on Ujlaky's motion, the circuit court issued a five-page order and opinion articulating its basis for concluding that the requested fees were not reasonable. The court reasoned:

> In *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), the Michigan Supreme Court articulated the process for determining a reasonable attorney fee. The *Smith* Court stated that in determining the amount of attorney fees in a given case, a trail court should consider the eight factors set forth in MRPC 1.5(a) through a four-step process. *Smith*, 481 Mich at 530-31.

---

[2] *In re Ujlaky*, unpublished opinion per curiam of the Court of Appeals, issued October 23, 2014 (Docket Nos. 316494, 316809); unpub op at 7, rev'd in part *In re Ujlaky*, 498 Mich 890 (2015).

First, the trial court must determine the "reasonable hourly rate" for the attorney's services. *Id.* Second, the court must determine the reasonable number of hours expended by the attorney. *Id.* at 531. The court should exclude any hours expended by the attorney that were excessive, redundant, or otherwise unnecessary. *Id.* at 532 n 17. Third, the court must multiply the reasonable hourly rate by the reasonable number of hours expended. *Id.* at 531. The product is the baseline figure for reasonable attorney fees. *Id.* at 533. Fourth, the court must consider the six other factors set forth in MRPC 1.5(a) and determine whether any of these factors supports an increase or decrease in the baseline figure. *Smith*, 481 Mich at 531.

As to step one, Kent County has established a reasonable hourly rate of $55 per hour for appointed appellate counsel, and Mr. Ujlaky agreed to accept the appointment at this hourly rate.

Turning now to step two, Mr. Ujlaky claims that he spent 1.3 hours traveling to and from the State Appellate Defender Office ("SADO") in Lansing and conducting a videoconference with Mr. Simpson, 3.7 hours in "other contact/communication" with Mr. Simpson, 9.4 hours reviewing the record, 4.0 hours of legal research, 12.5 hours drafting the delayed application for leave to appeal, and 8.2 hours in "administrative time," which totals 39.1 hours. Save for the 1.3 hours spent conducting the videoconference, every one of those figure represents time that was excessive, redundant, or otherwise unnecessary.

Deducting the travel time to and from Mr. Ujlaky's office to SADO, which is a round-trip of approximately seven miles, it appears that Mr. Ujlaky spent approximately one hour discussing the case with Mr. Simpson during the videoconference. That was a sufficient and reasonable amount of time to discuss all of the relevant legal and factual issues in Mr. Simpson's case. Therefore, the 3.7 hours of "other contact/communication" was excessive and unnecessary.

The 9.4 hours that Mr. Ujlaky claims to have spent reviewing the record is also clearly excessive. The case file is not voluminous. At the time that Mr. Ujlaky reviewed the file, it consisted of just one folder. Even acknowledging that there was a significant amount of transcripts to review, approximately 100 pages total, it should have taken Mr. Ujlaky no more than three hours, *at most*, to review the entire case file.

The 31-page delayed application for leave to appeal that Mr. Ujlaky filed contained a 22-page analysis of the two issues preserved by Mr. Simpson in his conditional plea. Both of those issues were briefed by trial counsel and subject to hearing prior to this Court ruling on those issues. Therefore, as aptly noted by the Court of Appeals, Mr. Ujlaky "would not have done a great deal of original analysis to present those issues on appeal." *In re Attorney Fees of John W. Ujlaky*, unpublished opinion per curiam of the Court of Appeals, issued October 23, 2015 (Docket No. 316494). Based on the research and analysis already conducted by the trial counsel on those two issues, the 16.5 hours that Mr. Ujlaky

-3-

claims to have spent conducting legal research and drafting the delayed application for leave is, once again, clearly excessive.

Finally, as to the 8.2 hours of "administrative time" that Mr. Ujlaky claims to have expended, these "administrative" tasks should have been included in the time already accounted for, i.e., the time spent communicating with Mr. Simpson, reviewing the case file, and preparing the delayed application for leave to appeal. There is no reason to believe the [sic] Mr. Ujlaky had to expend a significant amount of time outside the tasks just enumerated, let alone an additional *8.2 hours*. Therefore, this amount of time is grossly excessive and clearly redundant.

The burden is on Mr. Ujlaky to prove the reasonableness of his requested fees, and during oral argument, the Court asked him directly, "[W]hat was it of this case that represented extraordinary complexity or difficulty?" He responded, "Well, nothing particularly, you know."

In sum, Mr. Ujlaky has failed to show how this case or the requirements of his representation of Mr. Simpson were extraordinary in any regard. Therefore, given the circumstances of Mr. Simpson's case, which was a plea-based conviction, 12 hours was a reasonable amount of time for Mr. Ujlaky to perform *all* of the tasks required in his representation of Mr. Simpson, including preparing and filing the delayed application for leave to appeal.

In step three, multiplying the reasonable hourly rate of $55 by the reasonable number of hours expended, which is 12, gives a baseline reasonable attorney fee of $660.

Now, considering the other six factors in MRPC 1.5(a):

* The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer—Not applicable.

* The amount involved and the results obtained—While counsel's efforts were unsuccessful, it would be inappropriate to use this factor in a criminal case where due process rights are involved.

* The time limitations imposed by the client or by the circumstances—Not applicable.

* The nature and length of the professional relationship with the client—Not applicable.

* The experience, reputation, and ability of the lawyer or lawyers performing the services—Counsel is a highly experienced appellate attorney, and given that extensive legal knowledge and training, he should have used the efficiencies gained through that experience to quickly spot

-4-

issues and set forth his positions within the time parameters which he agreed to when he accepted the case.

\* Whether the fee is fixed or contingent—Counsel knew the rate of pay and the standard maximum fee when he accepted the appointment.

None of these factors justify an attorney fee greater than the baseline $660 fee. Accordingly, Mr. Ujlaky has failed to meet his burden of proving that a reasonable attorney fee for his representation of Mr. Simpson exceeds the $660 already tendered to him.

## II. LAW OF THE CASE

### A. STANDARD OF REVIEW

On appeal, Ujlaky only argues that the circuit court failed to follow our Supreme Court's order by issuing a written opinion and order without holding a hearing and articulating its reasons "on the record." We review de novo "[w]hether a trial court followed an appellate court's ruling on remand . . . ." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007).

### B. ANALYSIS

"It is the duty of the lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court." *Rodriguez v Gen Motors Corp (On Remand)*, 204 Mich App 509, 514; 516 NW2d 105 (1994). Ujlaky argues that the circuit court failed to follow our Supreme Court's order because it did not hold a hearing and state its reasons on the record. Ujlaky does not provide any support for his interpretation that "on the record" necessarily implies holding a hearing. However, in reference to MCR 2.517(A)(3), we have explained that the

> purpose of articulation is to facilitate appellate review. Remand for additional articulation is unnecessary where it is manifest that the court was aware of the factual issues and resolved them and it would not facilitate appellate review to require further explication of the path the court followed in reaching the result. [*People v Johnson (On Rehearing)*, 208 Mich App 137, 141-142; 526 NW2d 617 (1994) (citations omitted).]

Here, our Supreme Court remanded this case to the circuit court to articulate its reasons on the record, presumably to "facilitate appellate review." See *id*. The court's written order, as set forth in detail above, sufficiently accomplished that task.

Moreover, assuming *arguendo* the circuit court was required to articulate in open court its reasons for denying Ujlaky's request for extraordinary fees, we would find the court's failure to do so harmless. Ujlaky does not challenge the substance of the circuit court's ruling denying him extraordinary fees. Specifically, he does not argue and we do not find that the court misapplied the relevant caselaw or misapplied the law to the facts of this case. Accordingly,

-5-

even if the court erred by not holding a hearing, the court's ultimate decision was not inconsistent with substantial justice. See MCR 2.613(A) ("[A]n error in a ruling or order . . . is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.").

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Kelly